```
   O1UJHARC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                          22 Cr. 457 (LTS)

5  AIMEE HARRIS,

6                                          Conference
                    Defendant.
7
   ------------------------------x
8
                                            New York, N.Y.
9                                           January 30, 2024
                                            12:00 p.m.
10

11 Before:

12                   HON. LAURA TAYLOR SWAIN,

13                                          Chief Judge

14                        APPEARANCES

15 DAMIAN WILLIAMS
        United States Attorney for the
16      Southern District of New York
   JACQUELINE C. KELLY
17 MITZI STEINER
        Assistant United States Attorney
18
   ANTHONY CECUTTI
19 KESTINE THIELE
        Attorneys for Defendant
20

21

22

23

24

25
```

(Case called)

THE COURT: Good afternoon, counsel.

Would you introduce yourselves.

MS. KELLY: Good afternoon, your Honor.

Jacqueline Kelly and Mitzi Steiner for the government.

THE COURT: Good afternoon, Ms. Kelly and Ms. Steiner.

MR. CECUTTI: Good afternoon, your Honor.

Anthony Cecutti and Kestine Thiele for Amiee Harris, who is joining us by phone from a hospital in Florida.

THE COURT: Good afternoon, Mr. Cecutti and Ms. Thiele and Ms. Harris. Are you on the line, Ms. Harris?

THE DEPUTY CLERK: She muted herself.

THE COURT: Ms. Harris, would you please unmute yourself and let me know if you're on the line and able to hear. Ms. Harris? I see the icon indicating that you are there and muted, would you please unmute yourself and state your name.

Mr. Cecutti, do you have a telephone number that you can use to call her to --

MR. CECUTTI: We do. We're texting with her as we speak instructing her the same as your Honor is instructing her to unmute herself. We can call her right now, as well, if your Honor would like.

THE COURT: Is she responding to your texts?

MR. CECUTTI: No.

1    THE COURT:  Ms. Harris, court is in session.  I direct
2 you to unmute yourself and to speak.  That is a Court order.
3    The record will reflect that there is an icon "AH"
4 indicating that Ms. Harris is on the Teams connection, and next
5 to her name on the Teams connection there is the muting symbol.
6 And so Ms. Harris, you are not in compliance with my order and
7 I will expect that you will unmute yourself and appear since
8 you did request to participate in this conference remotely.
9 And if you don't appear, I will consider an appropriate
10 response.  But we will go forward for now.
11    I greet everyone who is in the courtroom.  I remind
12 everyone in the courtroom and Ms. Harris on the telephone that
13 no recording nor any retransmission of any part of this
14 proceeding is permitted.
15    Today had been scheduled quite some time ago as
16 Ms. Harris' sentencing date in this matter, and we were careful
17 to choose a date on which Ms. Harris said that she could make
18 herself available.  I was informed yesterday that Ms. Harris is
19 ill and has childcare issues.  I will ask Mr. Cecutti to speak
20 further to those in a moment.
21    But today, we are having a conference for the purpose
22 of addressing rescheduling of the sentencing.  As I say,
23 Ms. Harris is not here in person.  She requested through her
24 attorney the opportunity to attend by video conference, and I
25 have received a consent to proceed by video conference form

1     that was signed by Mr. Cecutti and by Mr. Cecutti on
2     Ms. Harris' behalf.  That is an electronic signature.
3              And so Mr. Cecutti, I'd like you to start by
4     confirming and explaining the basis for your understanding that
5     Ms. Harris requested and consented to participate in this by
6     video conference and tell us why we're here in this way and
7     what you would propose as next steps.
8              MR. CECUTTI:  Following the last conference in which a
9     date for sentencing was selected by Ms. Harris, we made various
10    efforts to contact her and did not get a response.  My
11    understanding is that she did not also speak with the
12    additional counsel that your Honor had assigned, Natali Todd,
13    and I believe Ms. Todd had filed a letter to that effect
14    recently.
15             THE COURT:  Yes, she did.
16             MR. CECUTTI:  And we also had sought funding from the
17    Court to arrange for her travel and transportation, and your
18    Honor had signed an order permitting that.  So that issue was
19    taken care of and as we were preparing for today and attempting
20    to arrange for her travel, we were unsuccessful in getting a
21    response from Ms. Harris and then very recently were notified
22    that she has childcare issues, she couldn't travel.
23             And then very recently we were informed that she was
24    sick, and that was also a reason why she couldn't be here.  And
25    then we were told this morning that she was very sick and

needed to go to the ER.  And my understanding is that she arrived at the ER around 11:20 or 11:30 this morning.  I instructed her that the Court had provided a video link and that she should join at 12:00 p.m.  It appears that she did make an attempt.  I don't know what is going on in terms of her inability to be on the phone right now.  But that is where we are at.

In terms of next steps, I had an opportunity to briefly speak with the government.  I think the fact that she's not here today could result in a discussion regarding whether the Court should issue a bench warrant.  I don't think that that is appropriate today as a next step.  This case needs to get resolved.  She needs to get sentenced.  She needs to be here.  We are making every effort on our part to do it, to facilitate that, and I don't think that she's in a condition today to provide us with another date.  I am more than happy to try and get that information later today, if I can, or tomorrow and update the government and update your Honor.

And that's what I would propose as a next step.

THE COURT:  I'm a little bit puzzled by the references to childcare issues and, indeed, she was making the same sorts of statements when we scheduled today's date.  Looking back through my notes and the records of our communications here, the last information I had was that the father of the children had physical custody of the children and she didn't have

1  custody of the children.

2  Do you know whether that situation has changed or what
3  the particular nature of the childcare issues is?

4  MR. CECUTTI:  I don't think the father has custody of
5  the children.  I think that she is the primary caretaker.  I
6  think that was confirmed by pretrial in Florida, but I'm not a
7  hundred percent certain.

8  THE COURT:  Ms. Kelly, you seem to be shaking your
9  head.  Do you have information?

10  MS. KELLY:  I spoke to the pretrial about this very
11  issue this morning, given the several references to childcare
12  issues with scheduling.  My understanding is that Ms. Harris
13  has represented to pretrial that she has some kind of shared
14  custody arrangement with her ex-husband and that they share
15  time.  Pretrial has not been able to confirm during a home
16  visit that the children have actually been with her, and nor
17  does pretrial nor the government have any documentation of a
18  change in the custodial arrangement.

19  And in addition, I asked pretrial today about
20  childcare issues pertaining to this appearance because my
21  understanding is that the children are school aged and in
22  school, and they were not able to get clarification on that as
23  well.  So I'm a little bit skeptical of the childcare issues.

24  THE COURT:  Thank you.

25  This is obviously a highly irregular situation, and

there is a public interest in bringing this case to its next appropriate step, which is sentencing. If we take at her word that Ms. Harris is in an ER today, even to the extent that the rules would permit a court to go forward without a defendant who voluntarily absents him or herself, I don't think we have a record that shows that the absence is voluntary here.

I have done some looking into the rules. As much as I think it is in not only the public interest, but in Ms. Harris' interest for her to be here physically present for sentencing to show herself compliant with and respectful of the orders and requirements of the Court, the rules would seem to permit, with a knowing and voluntary waiver of physical presence, a remote appearance by Ms. Harris for sentencing. And if she does, indeed, have childcare responsibilities and issues, that could be preferrable to a bench warrant and involuntary transport up to New York for a sentencing, which would also leave the question of care of the children. And so if we could have an assurance of participation on a date remotely, that would seem to be a possibility.

Now, today, we arranged this remote participation. Ms. Harris apparently did communicate through the remote connection but is not communicating through the remote connection, but is saying that she's in the emergency room. So again, it is impossible for me at this point to tell what's going on and why she's not on the line -- Ms. Harris?

1   THE DEFENDANT: I'm listening on the line. I'm in an
2   emergency room. I'm so sorry. I don't mean to interrupt, your
3   Honor. It's very loud. I'm listening to everything. I just
4   didn't want you to be subjected to -- there's a woman screaming
5   and a police officer coming out to maybe take her out of the
6   emergency room.
7   THE COURT: So I had told you ten minutes ago to
8   unmute and say your name. Why didn't you do it then?
9   THE DEFENDANT: I couldn't hear you. They were taking
10  my vitals.
11  THE COURT: All right.
12  THE DEFENDANT: I'm sorry. I don't mean to interrupt,
13  your Honor. I sent my attorneys that I was on -- that they
14  were taking my vitals. And the issue of childcare is that my
15  mother was supposed to come down and take care of my children,
16  and she has had COVID for two weeks and just left her house for
17  the first time yesterday.
18  THE COURT: And so if we were to reschedule an
19  in-person sentencing, what is the prospect that you would be
20  able to give us assurance that you would be here?
21  THE DEFENDANT: I can give you assurance. I just
22  don't have it with me today. I'm in an ER. I can hardly even
23  breathe right now. If I can confer with my attorneys and then
24  get -- and I don't know -- I heard them say something about
25  getting back to you about another time to come up.

1       THE COURT:  I am sorry to hear --

2       THE DEFENDANT:  Maybe I heard that wrong.

3       THE COURT:  Well, that was one of the proposals that
4  was made.  We're talking about different possible next steps,
5  and I have to hear still from the government on their view.
6  But thank you for confirming that you are on the line.  And
7  would you also just confirm while you're here that you
8  requested to participate remotely in this conference; is that
9  correct?

10       THE DEFENDANT:  Yes, your Honor.

11       THE COURT:  All right.  And so keep listening.  I may
12  ask you specifically to come back on the line so that we can
13  hear you, but if you want to put yourself on mute now, you may.

14       THE DEFENDANT:  It's very loud and there's one woman
15  that's very belligerent, so I didn't want to subject everybody
16  to that.  And they have had a police officer standing right
17  beside her to make sure they are about to escort her out.
18  Excuse me.

19       THE COURT:  Thank you for explaining that.  And I do
20  hope that you feel better and get the proper attention.  So
21  please put yourself on mute and keep listening.

22       THE DEFENDANT:  Thank you.  Okay.  Thank you, your
23  Honor.

24       THE COURT:  Mr. Cecutti, is there anything you would
25  like to say before I hear from counsel for the government?

1       MR. CECUTTI:  I don't think so, other than perhaps
2  expanding on the idea of a next step being that Ms. Harris
3  provide me with her availability within 24 hours.  I can
4  provide that information to the Court, the Court can certainly
5  issue an order directing Ms. Harris to provide that information
6  to me, which, in turn, I would immediately provide that to the
7  government.  We would work out another date.
8       Now, as we discussed next dates, both Ms. Thiele and I
9  are scheduled for a trial in the Eastern District that will
10 last about three to four weeks beginning February 12.  So if it
11 is possible, we would like to have it resolved and have another
12 date before February 12.
13      THE COURT:  As would I.  And I will do what's
14 necessary with my calendar to make that happen.
15      Ms. Kelly, would you like to be heard?
16      MS. KELLY:  Yes, your Honor.  Thank you.
17      I believe your Honor has laid out most of kind of the
18 procedural history that the government wanted to make sure we
19 have on the record.  Just to add a few points, after receiving
20 counsel's letter yesterday that Ms. Harris was unable to appear
21 today because of illness and childcare issues, the government
22 has been in touch with pretrial services here in New York and
23 Ms. Harris' supervising officer in Florida, and we have been
24 informed that there have been numerous difficulties, not only
25 with counsel communicating with Ms. Harris, which was

1  summarized in the letter put in by Ms. Todd last week, but also
2  pretrial being able to communicate with her, and that for hours
3  this morning, her pretrial officer in Florida was attempting to
4  get ahold of Ms. Harris to find out what was going on and was
5  unable to do so and was only able to make contact with
6  Ms. Harris after calling her mother.
7        At this point, the government has very significant
8  concerns about Ms. Harris' willingness to participate in this
9  process to appear, that she understands the gravity of the
10 situation, and that the sentencing which, as your Honor noted,
11 was scheduled around her schedule, that it must proceed.  There
12 is an interest, as your Honor noted, in this case drawing to a
13 conclusion.  And as your Honor knows, Ms. Harris was originally
14 scheduled to be sentenced more than a year ago at this point.
15       And so we share in the Court's desire and I think
16 defense counsel's, too, to have this draw to a close as swiftly
17 as possible and would request a new in-person sentencing date
18 as soon as convenient.  And we understand that Ms. Harris needs
19 to travel here and if there are childcare issues, that they can
20 be worked out.  It's also our understanding from pretrial that
21 Ms. Harris is not currently working, and so we hope that there
22 are not many conflicts to resolving this as quickly as
23 possible.
24       Pretrial services was unable to appear today in
25 person.  I understand that they're available by phone if the

1  Court requests to speak with them, but there may be additional
2  applications made on their behalf.  The one application that
3  the government would make at this point is that the Court would
4  consider ordering Ms. Harris to provide documentation of these
5  medical issues that she is basing her absence in court here
6  today on.  And so if she's in the hospital right now, that
7  there be documentation provided if she receives any diagnosis,
8  if there's any treatment.  Because given the record here, I
9  think seeking verification of what Ms. Harris is asserting is
10 appropriate.
11         As your Honor may have noted, in the PSR there are
12 numerous instances where probation requested documentation or
13 verification of various matters in the PSR relating to prior
14 treatment, current treatment, custody matters, employment
15 matters, and was unable to obtain that verification.  And so I
16 think here, given the repeated delays, it would be appropriate
17 to receive some documentation to verify exactly what the
18 situation is in Florida with Ms. Harris.
19         Thank you.
20         THE COURT:  Thank you.
21         Mr. Cecutti?
22         MR. CECUTTI:  Just a couple of points, your Honor.
23         I, too, have been in communication with pretrial
24 services in Florida both yesterday and today.  And it's my
25 understanding that Ms. Harris and pretrial services in Florida

1  were in communication this morning.  Pretrial services did go
2  to the hospital to verify that Ms. Harris did, in fact, go to
3  the hospital around 11:20, 11:30 this morning.  That's from
4  pretrial services.
5          It's also my understanding that Ms. Harris does work
6  and she does have childcare issues.  And I'm in no way
7  condoning her actions, but they are real issues for her based
8  upon our representation and relationship with Ms. Harris.  So
9  again, I believe she is prepared to give me her availability
10 later today or tomorrow, and I can provide that immediately to
11 the government and to the Court so that we can set a final
12 date.
13         THE COURT:  I am preparing an order now.  Give me a
14 moment.
15         So I am asking Ms. Ng to type up an order with the
16 following text I'm about to email to her, which says,
17 "Defendant is directed to provide defense counsel no later than
18 5:00 p.m. on Wednesday, January 31, 2024, with her availability
19 for a sentencing to be held no later than February 11, 2024 in
20 New York, New York, as well as documentation of her diagnosis
21 and treatment at the hospital emergency room on January 30,
22 2024.  Counsel must immediately provide such information to the
23 government and the Court, and the parties shall jointly propose
24 a firm adjourned date."
25         So I am sending this to Ms. Ng so that she can plug

1    that into an order that I can sign and enter on the docket, and
2    we'll give counsel copies of it now so that you have it in
3    hand.
4             MS. KELLY:  Your Honor, just to clarify, with regard
5    to the sentencing date, would it be a date before — I think
6    February 9 would be the Friday.
7             THE COURT:  I didn't have my calendar in front of me.
8    So no later than February 9.
9             MR. CECUTTI:  That's correct, your Honor.
10            THE COURT:  All right.  So Ms. Ng, make that change in
11   the text that I sent you, please.
12            MR. CECUTTI:  Your Honor, I think Ms. Harris dropped
13   from the line.
14            THE COURT:  It does appear that she did.
15            MR. CECUTTI:  I've asked her -- oh, now she's back on.
16            THE COURT:  Okay.  It's not showing yet.
17            Oh, actually she is on, yes.
18            MR. CECUTTI:  I just wanted to make sure that she
19   heard what your Honor had said in terms of the Court's order.
20            THE COURT:  Ms. Harris, would you please unmute.
21            THE DEFENDANT:  Yes, your Honor.  Can you hear me?
22            THE COURT:  Yes, I can hear you.
23            I am entering an order that requires you to
24   communicate with Mr. Cecutti a firm date on which you will
25   appear for sentencing here in New York.  The date for the

1  sentencing has to be no later than February 9, and I'm

2  requiring you to communicate with him about such a date by

3  tomorrow afternoon and also to provide him with documentation

4  of your diagnosis and treatment in the emergency room today.

5      Do you understand that?

6      THE DEFENDANT:  I understand.

7      Is there a way to do it -- I can give him availability

8  by this afternoon or tomorrow afternoon.  Is that --

9      THE COURT:  Yes.

10      THE DEFENDANT:  I don't know if before February 9

11  would be possible.

12      THE COURT:  Well, given schedules and given how long

13  this has been put off, it would take a very, very serious and

14  concrete reason of impossibility before February 9 for me to

15  consider a date after February 9.  So you should communicate

16  candidly and concretely with Mr. Cecutti about that when --

17      THE DEFENDANT:  I understand.

18      THE COURT:  -- you speak.

19      THE DEFENDANT:  Understood.

20      THE COURT:  Thank you.

21      THE DEFENDANT:  Thank you, your Honor.

22      THE COURT:  Now, you can put yourself on mute again.

23      THE DEFENDANT:  Okay.  Thank you.

24      THE COURT:  The order is being typed up now.

25      So I will look forward to hearing from counsel by the

O1UJHARC

1  end of the week as to the proposed adjourn date and the
2  confirmation and documentation of the ER visit today.  The
3  medical information can be submitted for sealed filing, but
4  must be shared with the government and the Court.
5           Is there anything else that we should address
6  together?
7           MS. KELLY:  Not from the government, your Honor.
8           MR. CECUTTI:  No, your Honor.  Thank you.
9           THE COURT:  Thank you.  We are adjourned.
10          And Ms. Harris, I wish you a swift recovery, and do be
11 in touch with Mr. Cecutti.  He has to be able to reach you and
12 speak to you.
13          Thank you.  We are all adjourned.
14          THE DEFENDANT:  Yes, your Honor.
15          (Adjourned)